IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS, INDIANA

| | |
|---|---|
| MICHELE L. MORIARTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.  1:19-cv-04101 |
| | ) |
| BELCAN, LLC, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 15(a) Plaintiff files her amended complaint as a matter of course. Plaintiff submits the following complaint as amended.

JURISDICTION

1. This suit is authorized and instituted pursuant to the Title VII 42 U.S.C. § 2000e et al., 29 U.S.C. § 206 and 28 U.S.C. § 1331.

2. Plaintiff received a notice of right to sue from the Equal Employment Opportunity Commission (EEOC) on July 20, 2019.

PARTIES

3. Plaintiff, Michele Moriarty, is a female citizen of the Southern District of Indiana.

4. Defendant is a corporation doing business in the State of Indiana in the Southern District of Indiana.

FACTS

5. Plaintiff began working for Defendant on August 21, 2013.

6. Plaintiff graduated from Purdue University's School of Engineering and Technology with a Bachelor's of Science in May 1992.

7. Plaintiff earned a Masters Degree in Business Administration from the University of Indianapolis in December 1998.

8. Plaintiff worked as an Engineer since her graduation from Purdue.

9. Plaintiff began working for Defendant on August 21, 2013, as a Senior Engineer.

10. Almost all of Plaintiff's performance reviews were rated exceeds expectations.

11. Defendant promoted Plaintiff in January 2016 into a management position where she supervised a team of employees for Defendant's customer Rolls Royce.

12. Plaintiff's title was Engineering Group Lead/Project Manager.

13. Defendant enters into contracts with Rolls Royce called Statement of Work (SOW) which define the scope of work Defendant will do for Rolls Royce.

14. Plaintiff was one of five group leads working under the manufacturing supply chain reporting directly to Jeff Worman.

15. Plaintiff was the only female group lead working under Jeff Worman.

16. Plaintiff's responsibilities as a group lead were to manage the employees under her supervision which included approving time cards, vacations, interviewing and hiring employees, providing manual performance reviews and employee improvement plans.

17. Plaintiff's group lead duties were charged to Defendant as overhead instead of Rolls Royce.

18. Plaintiff's responsibilities as project manager were to manage the SOW financials and deliverables working through the Rolls Royce Tech Lead.

19. Defendant allocated one hour per week per SOW for the project manager duties.

20. A few months after Plaintiff was promoted to the Engineering Group Lead/Project Manager position Nate Reid, a Rolls Royce employee, became her Rolls Royce contact person for

one of her SOWs.

21. Plaintiff was responsible for 7 SOWs at the time of her demotion.

22. Nate Reid exerted significant supervisory control over Plaintiff's responsibilities as a Project Manager.

23. Nate Reid supervised Plaintiff's day to day activities, assigned work to Plaintiff and heavily influenced her work conditions.

24. Prior to Nate Reid, Plaintiff was able to successfully complete her duties as a Project Manager within the one hour allocated for said duties as agreed to by Defendant and Rolls Royce.

25. Once Nate Reid became Tech Lead for the SOW it took 20 plus hours to complete her Project Manager duties.

26. Nate Reid treated Plaintiff and other female employees less favorably than male employees, he did not chastise them or overload them with unnecessary work.

27. One of Plaintiff's female subordinates, Coleen Leath, was having difficulty working with Nate Reid.

28. Nate Reid was unfairly counseling and chastising her work performance while her performance was no different than male employees that worked under Plaintiff's supervision.

29. Nate Reid's treatment of Coleen Leath got so bad that Plaintiff was forced to move her to another SOW for which Plaintiff had responsibility and Nate Reid had no involvement.

30. After Plaintiff moved Coleen Leath, Nate Reid escalated his harassment of Plaintiff due to her sex.

31. Nate Reid escalated work on her through emails, criticized Plaintiff for no justifiable reason, undermined her ability to manage her employees and continued to overload her with unnecessary work.

32. Male employees, that worked under Nate Reid's authority, were not subjected to the

harsh treatment which Plaintiff was subjected.

33. Other employees reported to their colleagues that Nate Reid was out to get Plaintiff.

34. Nate Reid "shushed" Plaintiff during a group meeting with his Rolls Royce employees and five of Plaintiff's subordinates.

35. Nate Reid sent Plaintiff scathing and disparaging emails and Jeff Worman acknowledged Plaintiff's receipt of the emails.

36. Basically Nate Reid was treating Plaintiff like he was treating Coleen Leath before Plaintiff moved her.

37. Nate Reid was not sending the same type of emails to male employees.

38. Plaintiff reported the harassing and discriminatory conduct to her supervisor Jeff Worman, in fact, Jeff Worman was aware of the disparaging emails Plaintiff was receiving from Nate Reid prior to Plaintiff's report of sexual harassment and sexual discrimination.

39. Nevertheless, the harassment and discriminatory conduct continued; in fact, Jeff Worman increased Plaintiff's workload but did not do the same to similarly situated males.

40. In July 2018 Jeff Worman, without any prior discipline or notice, demoted Plaintiff to a technician's position.

41. Plaintiff no longer had any managerial duties, her new duties consisted of data clean-up and she worked in a job that required no technical experience and no education beyond high school.

42. The reason Jeff Worman gave to Plaintiff for her demotion was that it was for her well being.

43. However, Defendant told the EEOC that Plaintiff was demoted due to performance problems.

44. Plaintiff was not having performance problems.

45. There were several similarly situated male employees that were having performance problems but Jeff Worman did not demote them.

46. Plaintiff was replaced by a male, Darren Turpen.

47. Darren Turpen did the exact same job as Plaintiff.

48. Obviously when Turpen took over Plaintiff's job, it still required the equal skill, effort, responsibility and the same working conditions as it did when Plaintiff worked the position.

49. Darren Turpen was paid $5.00 more per hour than Plaintiff.

50. Darren Turpen had no greater qualifications or experience than Plaintiff.

51. Prior to replacing Plaintiff Darren Turpen had performed poorly, he mismanaged his SOWs such that Rolls Royce did not renew contracts and his subordinates had to be furloughed; in fact, he told Plaintiff and other employees he was out the door prior to receiving Plaintiff's position.

52. Further, there were other male employees who did the same job as Plaintiff, that required the equal skill, effort and responsibility and worked under similar conditions as Plaintiff but they were paid more than Plaintiff.

53. Plaintiff then reported the harassing and discriminatory conduct to Kathy Hollenbeck, the Human Resource Director in August 2018.

54. The Human Resource Director indicated that Jeff Worman had not notified her of Plaintiff's complaint and she had no knowledge of Nate Reid's conduct.

55. After Plaintiff reported Nate Reid's harassing and discriminatory conduct and Jeff Worman's failure to take any action, Jeff Worman issued Plaintiff the worst performance review she had ever received from Defendant, despite the fact that Plaintiff's performance was as good as it had always been.

56. As a result of the review Plaintiff was ineligible for a raise or bonus.

57. Plaintiff was an hourly non-exempt employee for Defendant.

58. Plaintiff's hourly rate of pay was $35.53 per hour.

59. Plaintiff worked in excess of forty hours per week every week starting at the time she started working with Nate Reid.

60. Plaintiff worked 10 hours of overtime per week from October 1, 2016, to July 1, 2018, and Defendant failed to pay her any overtime wages.

61. As a result of Defendant's harassing, discriminatory and retaliatory conduct Plaintiff experienced severe mental anxiety and emotional distress which manifested itself in physical ailments requiring medical treatment.

62. Plaintiff began to experience severe pain throughout her body, but when she sought examination for what she thought was the cause, the test were negative.

63. For example, she was experiencing severe abdominal pain, which she thought was ovarian cancer, but test were negative for cancer.

64. Finally, it was determined that Plaintiff was experiencing stress related physical symptoms.

65. The situation got so bad Plaintiff had to take a medical leave of absence.

66. After six months of medical leave Defendant terminated Plaintiff due to exhaustion of leave time.

67. Plaintiff's medical leave and subsequent termination was due to Defendant's harassing and discriminatory conduct.

## COUNT I

68. Plaintiff incorporates by reference paragraphs 1 through 67.

69 Defendant as a result of discriminating against Plaintiff due to her gender has violated

Title VII.

## COUNT II

70. Plaintiff incorporates by reference paragraphs 1 through 67

71. Defendant as a result of retaliating against Plaintiff due to her protected activity Defendant has violated Title VII 42 U.S.C. § 2000e et al.

## COUNT III

72  Plaintiff incorporates by reference paragraphs 1 through 67.

73  Defendant as a result of harassing Plaintiff and allowing Plaintiff to be harassed due to her sex, is in violation of Title VII, 42 U.S.C. § 2000 et al.

## COUNT IV

74. Plaintiff incorporates by reference paragraphs 1 through 67.

75. Defendant as a result of discriminating and harassing Plaintiff constructively discharged Plaintiff prior to her actual termination in violation of Title VII 42 U.S.C. § 2000e et al.

## COUNT V

76. Plaintiff incorporates by reference paragraphs 1 through 67.

77. Defendant as a result of failing to pay Plaintiff overtime wages for work she had performed in excess of 40 hours per week violated the Fair Labor Standards Act 29 U.S.C. § 206 et al.

## COUNT VI

78. Plaintiff incorporates by reference paragraphs 1 through 67.

79. Defendant as a result of failing to pay Plaintiff wages equal to male employees for doing the same work under the same conditions has violated the Equal Pay Act 29 U.S.C. § 206(d).


## **CLAIM FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays the Court grant the following relief:

A.      Reinstate Plaintiff to her former position.

B.      Award Plaintiff back pay, front pay and benefits lost.

C.      Award Plaintiff compensatory damages.

D.      Award Plaintiff punitive damages.

E.      Liquidated damages.

F.      Award Plaintiff her costs in this action and reasonable attorney's fees.

G.      Grant any and all other relief as is just and proper in the premises.

Respectfully submitted,

**STOWERS & WEDDLE P.C.**

 s/Gregory A. Stowers
Gregory A. Stowers, #13784-49
Attorney for Plaintiff

## **REQUEST FOR JURY TRIAL**

Comes now the Plaintiff, by counsel, and requests that this cause be tried by jury.

Respectfully submitted,

  s/Gregory A. Stowers
Gregory A. Stowers, #13784-49

**STOWERS & WEDDLE P.C.**
626 N. Illinois Street
Suite 201
Indianapolis, IN 46204
(317)636-6320